UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THOMAS LOUIS DYCUS, III,

      Petitioner,

v.                                                          Case No.  3:16cv162/MCR/CJK

JULIE JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 10).  Petitioner replied.  (Doc. 12).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

This case involves petitioner's multiple convictions for possessing multiple images of child pornography.  Petitioner was charged in Escambia County Circuit Court Case No. 2014-CF-1425, with one count (Count 1) of possessing with intent to promote, a digital image depicting a child engaging in sexual conduct, in violation of Section 827.071(4), Florida Statutes.  (Doc. 10, Ex. A, p. 1).[1]  Petitioner was also charged with 40 counts (Counts 2-41) of possessing a digital image depicting a child engaging in sexual conduct, in violation of Section 827.071(5), Florida Statutes. (Ex. A, pp. 1-22).  The number and content of the images involved in Counts 2-41 caused those offenses to be reclassified upward – from third degree felonies to second degree felonies – under Florida's child pornography reclassification statute, section 775.0847.   (Ex. A, pp. 1-22; *see also* Fla. Stat. § 775.0847 (2013)).  Accordingly, each of petitioner's 41 charges was a second degree felony carrying a maximum possible penalty of 15 years in prison, bringing petitioner's total maximum possible sentence to 615 years in prison.  *See* Fla. Stat. § 775.082(3)(d).  Had Counts 2-41 remained third degree felonies, each of those charges would have

---

[1]All references to exhibits are to those provided at Doc. 10.  When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

carried a maximum possible sentence of five years in prison, bringing petitioner's total maximum possible sentence to 215 years in prison. *See* Fla. Stat. § 775.082(3)(e).

On January 23, 2015, petitioner, pursuant to a counseled, negotiated plea agreement, entered a straight up plea of no contest to Counts 1-16, as charged, with an adjudication of guilt and designation as a sexual offender, in exchange for the State nolle prossing Counts 17-41. There was no agreement as to sentence. (Ex. A, pp. 92-96 (plea agreement), pp. 83-91 (plea hearing transcript)). The trial court accepted petitioner's plea and set the matter for sentencing. (Ex. A, pp. 83-91).

At sentencing, defense counsel raised and argued a challenge to the constitutionality of Florida's reclassification scheme. Counsel incorporated by reference a motion and argument made in a prior case on the same issue – that Sections 827.071(5) and 775.0847 are vague and ambiguous because a reasonable person of ordinary intelligence is not placed on notice of the penalties that attach to each violation of Section 827.071(5); therefore, "the Counts 2 through 16 that my client pled to should not be sentenced as second degree felonies, but third degree felonies." (Ex. A, pp. 100-105; *see also* Ex. B). The trial court denied the motion and sentenced petitioner to a total term of 17 years in prison. (Ex. A, pp. 100-27

(sentencing hearing), pp. 152-59 (judgment and sentence)).[2]  Petitioner sought further review of the sentencing issue on direct appeal.  (Ex. C).  On December 30, 2015, the Florida First District Court of Appeal (First DCA) affirmed per curiam without opinion.  *Dycus v. State*, 181 So.3d 486 (Fla. 1st DCA 2015) (Table) (copy at Ex. E).

On February 1, 2016, petitioner filed a *pro se* motion for mitigation of sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. G).  The trial court denied the motion on February 16, 2016.  (Ex. H).

Petitioner filed his federal habeas petition on April 15, 2016, raising one claim:  that the statute reclassifying his offenses in Counts 2-16 from third degree felonies to second degree felonies is unconstitutional under the void-for-vagueness doctrine.  (Doc. 1, pp. 6(a)-6(c)).  Respondent argues that the state court's rejection of this claim is neither contrary to, nor an objectively unreasonable application of, clearly established Federal law.  (Doc. 10, pp. 11-19).

---

[2] Petitioner received 15 years in prison on Count 1, and 2 years in prison on each of the remaining counts (Counts 2-16) to run concurrent with each other and consecutive to Count 1.

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]

does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See*

*Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The

Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning
> their decisions only when there could be no reasonable dispute that they
> were wrong. Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal." *Harrington,
> supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The

§ 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*,

562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding. *See

Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable

application" clause, the federal court applies an objective test. *See Miller-El v.

Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a

factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## ANALYSIS

"The Petitioner Was Denied Due Process Of The Law As Guaranteed By The Fourteenth Amendment To The United States Constitution Pursuant To A State Statute That Is Constitutionally [sic] Vague Under The Two-Prong Test Established By The United States Supreme Court." (Doc. 1, p. 6(a)).

Petitioner challenges the reclassifications of Counts 2-16 from third degree felonies to second degree felonies, because "[t]aken together, Sections 827.071(5) and 775.0847, do not place a person of common intelligence on fair notice as to the penalty that may attach to the knowing possession of multiple images of child

pornography." (Doc. 1, p. 6(c)). Petitioner's claim has two parts. First, petitioner argues that the substantive offense statute, section 827.071(5), fails to give adequate notice and fair warning that the offense may be reclassified under section 775.0847. (Doc. 1, pp. 6(a)-(c); Doc. 12, pp. 1, 4-8). Second, petitioner argues that the reclassification statute, section 775.0847, is vague concerning the units of prosecution/reclassification, which allows arbitrary and discriminatory enforcement. (Doc. 1, p. 6(c); Doc. 12, pp. 1, 9-12). Petitioner presented his due process claim to the state courts at sentencing and on direct appeal. (Ex. A, pp. 102-06; Ex. B; Ex. C). The trial and appellate courts summarily denied relief without explanation. (Ex. A, pp. 105-06; Ex. B; Ex. F). Respondent asserts that petitioner cannot prevail, because he fails to meet § 2254(d)'s highly deferential standard.

A.    Clearly Established Federal Law

In *United States v. Batchelder*, 442 U.S. 114, 123 (1979), the Supreme Court held:

> It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888 (1939). A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954). So too, vague sentencing provisions may pose constitutional questions if they

> do not state with sufficient clarity the consequences of violating a given criminal statute.  *See United States v. Evans*, 333 U.S. 483, 68 S. Ct. 634, 92 L. Ed. 823 (1948).

*Id*. at 123 (additional citations omitted); *see also Beckles v. United States*, — U.S. —, 137 S. Ct. 886, 892 (2017) ("[T]he Court has invalidated two kinds of criminal laws as 'void for vagueness':  laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses.").  For laws that define criminal offenses, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[,] and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  For "statutes fixing sentences," *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551, 2557 (2015), the void-for-vagueness doctrine requires that the range of available sentences be specified with "sufficient clarity".  *Batchelder* at 123; *see also Beckles v. United States*, 137 S. Ct. at 892 (*citing Batchelder* at 123, and *United States v. Evans*, 333 U.S. 483 (1948)).

B.    Section 2254 Review of State Court's Decision

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted sub nom. Wilson v. Sellers*, 137 S. Ct. 1203 (2017). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

The substantive offense statute, section 827.071(5), provides in relevant part:

It is unlawful for any person to knowingly possess, control, or intentionally view a photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child.  The possession, control, or intentional viewing of each such photograph, motion picture, exhibition, show, image, data, computer depiction, representation, or presentation is a separate offense.   If such photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation includes sexual conduct by more than one child, then each such child in each such photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation that is knowingly possessed, controlled, or intentionally viewed is a separate offense.   A person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 827.071(5)(a) (2013).

The reclassification statute, section 775.0847, provides in relevant part:

(2) A violation of s. 827.071, s. 847.0135, s. 847.0137, or s. 847.0138 shall be reclassified to the next higher degree as provided in subsection (3) if:

  (a) The offender possesses 10 or more images of any form of child pornography regardless of content; and

  (b) The content of at least one image contains one or more of the following:

    1. A child who is younger than the age of 5.

    2. Sadomasochistic abuse involving a child.

　　3. Sexual battery involving a child.

　　4. Sexual bestiality involving a child.

　　5. Any movie involving a child, regardless of length and regardless of whether the movie contains sound.

　　(3)(a) In the case of a felony of the third degree, the offense is reclassified to a felony of the second degree.

Fla. Stat. § 775.0847(2) and (3)(a) (2013).  Petitioner's offenses on Counts 2-16 were reclassified upward under section 775.0847, and he was sentenced in accordance with section 775.082, Florida Statutes.[4]

　　Petitioner first argues that Florida's reclassification provisions are unconstitutionally vague because the statute defining and classifying the substantive offense, section 827.071(5), authorizes punishment under three specific sentencing statutes but does not mention, or give fair notice of, the possibility of reclassification under section 775.0847.  Petitioner argues that section 775.0847 "enters through a back door to prescribe an enhanced penalty not definitively enumerated in section 827.071(5)", and that the relationship between the two statutes "is so vague and ambiguous that a person of ordinary intelligence must necessarily guess as to the

---

[4] Petitioner did not qualify for enhanced sentencing under section 775.084.  Petitioner was not assessed any fines under section 775.083.

penalty that attaches to a violation of section 827.071(5)." (Doc. 1, p. 6(b); *see also* Doc. 10, Ex. C, pp. 6-7 (direct appeal brief)). Petitioner concludes that "[t]o impose criminal penalties not disclosed in the substantive charging statute belies the notion of fair warning and leaves a defendant to guess at the location of hidden criminal penalties." (Doc. 12, pp. 5-6).

The First DCA's rejection of petitioner's claim is not "contrary to" clearly established Federal law. The Supreme Court has never held a criminal statutory scheme void for vagueness where notice of reclassification of an offense, and the requirements for reclassification, are explicitly provided in the reclassification statute but not in the statute defining the criminal offense.

Petitioner says the First DCA's decision is contrary to the Supreme Court's decisions in *Batchelder, supra*, and *Evans, supra*, because those cases clearly establish that "vague sentencing provisions pose significant constitutional concerns when they do not state with sufficient clarity the consequences of violating a given criminal statute." (Doc. 12, p. 6).[5] Petitioner's counseled direct appeal brief also cited *Evans* for the proposition that "the doctrine of constitutional vagueness . . .

---

[5] This reference to *Batchelder* and *Evans* is made in petitioner's reply, and is his only reference to Supreme Court precedent.

requires that a person be placed on fair notice that particular conduct is a crime and what the penalty for the crime might be." (Doc. 10, Ex. C, p. 6 (*citing Evans*)). Petitioner's state appellate brief cited no other federal authority.

The general principle that a criminal statute must provide fair notice of the conduct proscribed and the penalty provided is far too abstract to establish clearly the specific rule petitioner needs to overcome § 2254(d)'s high bar. The Supreme Court has never held that notice of the possibility of reclassification must be provided in the statute establishing and defining the substantive offense. *See Lopez v. Smith*, 574 U.S. —, —, 135 S. Ct. 1, 4 (2014) ("We have before cautioned the lower courts . . . against 'framing our precedents at such a high level of generality.'"); *see also Woods*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." (*quoting Lopez*)); *Shelton v. Sec'y, Dep't of Corr.*, 691 F.3d 1348, 1354 (11th Cir. 2012) (holding that Florida appellate court's rejection of facial attack on constitutionality of state criminal statute was not "contrary to" clearly established federal law where only a very general principle could be distilled from the Court's cases in that area, and "[t]he [Supreme] Court has not drawn lines around this principle sufficient to dictate a particular result of the Florida court

here[.]"); *Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be 'contrary to clearly established Federal law as determined by the U.S. Supreme Court.'") (*quoting Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003)).

      Moreover, the facts here are not materially indistinguishable from the facts in *Batchelder* or *Evans*.    The *Batchelder* case involved two overlapping federal criminal provisions that authorized different maximum penalties for the same conduct (receiving, while a convicted felon, a firearm that traveled in interstate commerce).    The Court viewed the totality of the statutory framework and concluded:  "Although the statutes create[d] uncertainty as to which crime may be charged and therefore what penalties may be imposed, they d[id] so to no greater extent than would a single statute authorizing various alternative punishments." *Id*. at 123.  The Court held that so long as the overlapping criminal provisions "clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied."  *Id*.  *Batchelder* does not clearly establish that notice of the possibility of reclassification must be provided in the statute defining the criminal offense, as opposed to a separate statute authorizing

reclassification.  This holds true even where, as here, the statute defining the criminal offense also references applicable sentencing provisions.

As to *Evans*, that case involved a federal statute making it unlawful to, in essence, bring into the United States, or conceal or harbor in any place, an alien not lawfully entitled to enter or reside within the United States.  The penalty provision of the statue defined the penalty for "bringing in or landing" offenses, but was wholly silent on "concealing or harboring" offenses.  The Supreme Court viewed the statutory framework in its entirety and concluded that Congress' silence made the intended penalty for "concealing or harboring" too uncertain.  *See Evans*, 333 U.S. at 484-85, 495.  *Evans* is distinguishable from this case, because the Florida Legislature made abundantly clear that offenses under section 827.071 are subject to reclassification, *see* Fla. Stat. § 775.0847(2), and also made abundantly clear the requirements for reclassification, *see* Fla. Stat. § 775.0847(3).[6]

---

[6]The Florida Legislature has enacted numerous reclassification statutes: section 784.07 reclassification of assault or battery to the next higher degree if the victim was a law enforcement officer; section 775.0845 reclassification of almost any offense to the next higher degree where the defendant wore a mask; section 775.085 reclassification of any crime to the next higher degree where the crime was based on prejudice against the victim for race, ethnicity, color, ancestry, religion, sexual orientation, national origin, homeless status, or advanced age; section 775.0861 reclassification of several offenses to the next higher degree where the offense was committed on the property of a religious institution while the victim was on the property for the purpose of participating in or attending a religious service; section 775.0862 reclassification of certain felony sexual offenses to the next higher degree if the offense is committed by an authority figure of a school against a student of the school; section 775.0863 reclassification of any crime to the next

The remaining question is whether the First DCA unreasonably applied United States Supreme Court precedent.  Respondent asserts that one theory which could have supported the First DCA's decision is the theory the State advanced in petitioner's direct appeal:

> A person of ordinary intelligence could understand that subsections § 775.0841, § 775.0842, § 775.0843, . . ., § 775.0847, et cetera, are encompassed under the statutory section of § 775.084, Florida Statutes. The entire statutory subsection of § 775.084, Florida Statutes, provides for enhanced penalties or reclassification, and goes all the way up to § 775.0849 before moving into the 775.085 section.

(Doc. 10, pp. 15-16; *see also* Doc. 10, Ex. D, pp. 7-9).

Petitioner replies that section 775.0847 is not a subsection of section 775.084, but rather a wholly separate provision.  Petitioner points to the Preface to the Florida Statutes which provides:

> **Numbering system**. – After the chapters of the *Florida Statutes* are arranged by subject matter, each is assigned a whole number.  Each section within a chapter is identified by a decimal number consisting of the chapter number followed by two to five digits appearing to the right of the decimal point.  For example, "s. 16.01" would identify a section in chapter 16 of the *Florida Statutes*.  Various designations thus indicate the hierarchical arrangement of textual subdivisions.  Chapters are identified by whole Arabic numbers; section, by numbers

---

higher degree where the crime was based on prejudice against the victim for mental or physical disability; and section 775.087 reclassification of a felony to the next higher degree if the defendant possessed a weapon during that felony.  In all of those reclassification schemes, notice of reclassification is provided in a separate reclassification statute and not in the statute defining the substantive offense.

<u>containing a decimal point; subsection, by whole Arabic number enclosed by parentheses;</u> . . .

The principal advantage of the decimal numbering system is its flexibility. <u>A new section can always be inserted between any two existing sections. For example, a new section inserted between ss. 16.12 and 16.13 can be assigned any number from 16.121 through 16.129 without using more than three digits to the right of the decimal point. The number of a section has no significance other than to indicate its location.</u> A section that is identified by a number containing four digits to the right of the decimal point is of no less importance than a section having a number with two or three digits to the right of the decimal point.

Linda S. Jessen, Preface to Florida Statutes at vii (2013) (petitioner's emphasis added); *see also Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So. 2d 1216, 1232 (Fla. 2006) ("[T]he Preface to the Florida Statutes explains the hierarchical numbering system of the Florida Statutes and provides guidance as to the structure and nomenclature used therein.").

The "unreasonable application" analysis does not require a fine-grained parsing of Florida's statutory numbering system. Even if this court were to reject respondent's theory, petitioner must still establish that no "fairminded jurist could agree" with the First DCA's decision that Florida's reclassification scheme satisfies the notice requirements of the Due Process Clause. Because *Batchelder* and *Evans* announce a general rule, the First DCA had "more leeway" in denying petitioner's

claim. *See Renico v. Lett*, 559 U.S. 766, 776 (2010) ("The more general the rule at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – the more leeway state courts have in reaching outcomes in case-by-case determinations." (internal quotation marks and citation omitted)).

Reading sections 827.071 and 775.0847 together, fairminded jurists can concur in the First DCA's determination that Florida gives fair notice that reclassification is an authorized penalty for violations of section 827.071. Section 775.0847 is contained in Chapter 775, which is the chapter prescribing penalties for violations of Florida's criminal laws. *See* Fla. Stat. Ch. 775 (titled, "Definitions; General Penalties; Registration of Criminals"). The title of section 775.0847, itself, states that it applies to the crime of possessing child pornography. *See* Fla. Stat. § 775.0847 (titled, "Possession or promotion of certain images of child pornography; reclassification"). The language of section 775.0847 explicitly states that it applies to violations of section 827.071. *See* Fla. Stat. § 775.0847(2).

The First DCA's rejection of this first aspect of petitioner's due process claim was not an unreasonable application of *Evans, supra*, or any other Supreme Court precedent. *See, e.g., Shelton*, 691 F.3d at 1354 (holding that Florida appellate court's rejection of facial challenge to constitutionality of statute was not unreasonable

where "[o]ne very general principle can be distilled from the Court's cases in this area" and, although there was a Supreme Court case holding a criminal provision unconstitutional under the Due Process Clause for failing to require sufficient *mens rea*, the Florida provision at issue was "sufficiently distinguishable" from that case; thus, the state court was not unreasonable in deciding "not to import [the reasoning of the Supreme Court case] into this very different context.").

Petitioner last argues that Florida's reclassification statute is unconstitutionally vague as to the "units of prosecution". Petitioner asserts:

> Section 775.0847 provides for reclassification based upon possession of "10 or more" pornographic images. The statute does not provide for multiple reclassifications based upon multiples of 10 images. Nor does the statute provide that the "10 or more images" can be used to reclassify each of the images in the group of "10 or more images." Consequently, the statute is too ambiguous to discern the permissible unit of prosecution, and resultantly, may authorize and even encourage arbitrary and discriminatory enforcement.

(Doc. 1, p. 6(c); *see also* Doc. 10, Ex. C, p. 8). Petitioner posits his own interpretation of section 775.0847, as plainly allowing only one violation of section 827.071 to be reclassified per criminal case. (Doc. 12, pp. 10-12; Doc. 10, Ex. C, pp. 7-8). Respondent answers that the plain language of section 775.0847, and the statutes to which it applies, provides persons of common intelligence adequate notice that each image/possession charge may be reclassified. (Doc. 10, pp. 16-19).

As with the claim before, the First DCA's rejection of this claim cannot be "contrary to" any holding from the United States Supreme Court, because none of the Supreme Court's cases confront, much less rule in petitioner's favor on the specific question raised here. Nor are the facts of this case materially indistinguishable from the facts of a Supreme Court case finding a criminal statute void for vagueness.

Petitioner also fails to show that no "fairminded jurist could agree" with the First DCA's decision that Florida's reclassification scheme (sections 827.071 and 775.0847, together) gives fair notice that each image may be charged separately and each charge reclassified, resulting in multiple reclassifications. *See* Fla. Stat. § 827.071(5)(a) ("The possession . . . of <u>each</u> such . . . <u>image</u> . . . <u>is a separate offense</u>. . . . A person who violates this subsection commits a felony of the third degree. . . .") (emphasis added); Fla. Stat. § 775.0847(2), (3)(a) ("A violation of s. 827.071 . . . . shall be reclassified to the next higher degree as provided in subsection (3). . . . In the case of a felony of the third degree, <u>the offense</u> is reclassified to a felony of the second degree.") (emphasis added). This understanding aligns with other Florida jurists' interpretation of the statutes. In *Walsh v. State*, 198 So. 3d 783 (Fla. 2d DCA

2016), the Second District Court of Appeal read the two statutes to resolve a double

jeopardy claim:

> [Mr. Walsh] contends that section 775.0847 required the State to charge any number of images arising from a single criminal episode totaling ten or more as a single offense.  Thus, Mr. Walsh posits that he could not have been convicted for more than one count in each case, and that thus the trial court violated double jeopardy. We disagree.
>
>     Under section 827.071(5)(a), "[t]he possession . . . of *each* such . . . *image . . . is a separate offense*."  (Emphasis added.) . . . The State could have charged each of the 170 images as a separate count.  As third-degree felonies, Mr. Walsh would have faced up to 850 years in prison.   Section 775.0847 does not constrain the State's charging discretion.   Rather, section 775.0847 allows the State to reclassify violations of section 827.071 to second-degree felonies if the offender possesses ten or more images and the content of at least one image contains at least one of the types of images listed in the statute.  *Id.* Read together, the statutes contemplate a possible separate charge for each image and allow for upward reclassification if the number of images totals ten or more.  Section 775.0847 does not require the State, as it did here, to limit the charges to one offense per ten images in order to reclassify.  Indeed, <u>the State could have charged Mr. Walsh with 170 second-degree felonies</u>.  As the State pointed out at sentencing, Mr. Walsh benefitted by the State charging only one offense for each group of ten images.

*Id.* at 785 (Kelly, LaRose, and Sleet, J.J., concurring) (footnote omitted)

(underscoring added); *see also Wingo v. State*, 162 So. 3d 1141, 1142 (Fla. 2d DCA

2015) (LaRose, Black, JJ., concurring) (affirming, without comment, defendant's

fifteen-year concurrent sentences following his guilty plea to forty counts of

possession of child pornography, all of which were reclassified as second-degree felonies pursuant to sections 827.071(5)(a) and 775.0847; writing only to correct scrivener's error on the written judgment "to accurately reflect that each listed charge and conviction is for a second-degree felony").

This court cannot say that no "fairminded jurist could agree" with the First DCA's conclusion that sections 827.071 and 775.0847 define the unit of reclassification with the clarity demanded by the Supreme Court's clearly established, general standard for vagueness challenges. Petitioner is not entitled to federal habeas relief. *See e.g., Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (holding that petitioner was not entitled to federal habeas relief "[b]ecause it is not clear that the [state court] erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision[.]"); *Davis v. Ayala*, — U.S. —, —, 135 S. Ct. 2187, 2199 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness" (internal quotation marks and citations omitted); and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citation omitted)).

## CONCLUSION

This court's role on habeas review is limited to AEDPA's narrow inquiry. That inquiry leads to the conclusion that nothing in the U.S. Reports decides or implies resolution of the novel issue of the constitutionality of Florida's reclassification scheme, and this court cannot find the First DCA's adjudication to be unreasonable under AEDPA.  Neither aspect of petitioner's due process claim satisfies § 2254(d)'s highly deferential standard.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is

whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Thomas Louis Dycus, III*, Escambia County Circuit Court Case No. 2014-CF-1425, be DENIED.

2. That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 22nd day of January, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.